HOWES *v.* CARVER.

An instruction which assumes that to be true, of which there is no proof, is erroneous.

Under section six of the act of 1852, in relation to estrays, the taker up of an estray, is confined to his plantation, or place of residence, and his authority to take up straying animals, does not extend to the entire township in which he resides.

Nor is such right necessarily confined to the township.   Ordinarily, he would be so confined; but should his farm or plantation be situated in different townships, he might take up in either, but not at any other place than at such plantation or farm.

The law of 1852, in relation to estrays, changes section 884 of the Code, so far as to confine the taker up, to his farm or plantation, and may, or may not, extend this right beyond the township in which he resides, depending upon the location or boundary of such plantation.

The words "or otherwise as the case may be," in section six of the act of 1852, have reference to the taking up, provided for by the eighth section of the same act, and contemplate a taking up *without*, and not within, the settlements.

The sole object of the certificate required by section twelve of the act of 1852, is to advise the owner of the property when examining the estray books, of

the loss or accident; and when the owner has knowledge of the loss on the same day it occurs, there is no reason in requiring the certificate to be·sent to the clerk.

### Appeal from the Alamakee District Court.

THE plaintiff sues for the value of a mare, which he alleges came into the possession of defendant by finding, and escaped by reason of his negligence. The answer denies all the material allegations of the petition. From the testimony (all of which is before us by proper bill of exceptions), it appears that the mare was a work beast, and strayed from plaintiff on the first of May, 1855, and on the next day was stopped by one Evans, at his residence about twenty miles distant, and about half a mile from defendant's. She had a halter on, and with this Evans fastened her to his fence. Defendant came along shortly after; they talked about the mare, and both thought they knew to whom she belonged. Evans had no stable, and at his request, defendant took the mare with him to his residence, and put her up. On the next day, defendant rode her a short distance, and on his return, put her in his stable, fed her, and fastened the door with its usual fastening. On the next morning, the door was open, the halter broken, and the mare gone. Defendant and another person started in search, and on that day, met the plaintiff coming for her, he having heard that defendant had taken her up. Defendant told him all the circumstances, and plaintiff required him to deliver the mare, or pay her value. This was refused, and the mare not being found, plaintiff brought this suit to recover her value.

On the trial, the court instructed the jury in substance as follows: The defendant must prove that he took up the mare in the civil township in which he resides; and if he did not do so, he had no right to take her up; and having done so, is liable for her value; and further, that if the mare escaped without the fault or neglect of the defendant, and he was faithful in taking care of her, he is not liable; but in order to avail himself of this defence, he must prove by the estray book of the county, that he gave notice, under his hand and

seal, to the clerk of the county judge, of such escape. Other instructions were given, but as they are not material in the decision of the case, we omit them. To the above instructions, the defendant excepted. Verdict for the plaintiff, and the usual motions in arrest and for a new trial, were made and overruled. The defendant appeals, and assigns for error these rulings of the court.

*W. T. Barker*, for the appellant.

*W. M. Tripp*, for the appellee.

WRIGHT, C. J.—Defendant seeks to reverse this case, *First*, because the instructions were erroneous; and *Second*, because the verdict was manifestly against the evidence. As we conclude that the first ground was well taken, we need not determine the second.

The first instruction is erroneous, inasmuch as it assumes that to be true, of which there is no proof. The jury are told that the defendant "having taken the mare up out of the proper township, he is liable." No testimony appears to have been given either way on this subject. And, again, if there had been, it was a question of fact for the jury, and not of law for the court.

But the more important point in this instruction is, whether any person has a legal right within the settlements, to take up an estray animal, *out* of the civil township in which he resides? And this question has been argued by counsel, as if it was material to inquire whether chapter 51 of the Code, and especially section 884, has been repealed by chapter 104 of the laws of 1852–3. Without determining this question, however, in the form presented, we proceed to state the views entertained by us of this part of the instruction. Under the statute of 1852–3, in force when this mare was taken up, the taker up is confined to his plantation or place of residence, and his authority or right to take up straying animals, does not extend to the entire township in which he resides. Nor is such right necessarily con-

fined to the township. Ordinarily, it is true, he would be so confined; but should his farm or plantation be situated in different townships, he might take up in either, but not at any other place than at such plantation or farm. If, therefore, in this case, the defendant's farm was confined to one township, he could not reasonably complain of this instruction, for it recognizes his right to take up in any place within such township, and does not confine him to his farm or plantation. If, on the other hand, his farm shall be part in one township and part in another, the instruction is erroneous, as far as it confines his right to take up, to the civil township in which he resides. In such a case, he would have the right to take up, in either township, if taken up at such plantation or farm. In short, as we understand the law of 1852–3, it changes section 884 of the Code, so far as to confine the taker up to his farm or plantation; and may or may not extend this right beyond the township in which he resides, depending upon the location or boundary of such plantation.

It is said, however, that section 6, provides that the taker up must make oath that the property was taken at his or her plantation, or place of residence in said county, " *or otherwise as the case may be,*" and that the words " or otherwise, as the case may be," would seem to contemplate a taking up at some other place than the residence or plantation of the finder. We think these words have reference to the taking up provided for in section 8 of the same act. By that section, any householder finding an estray horse, &c., running at large, *without any of the settlements of the state,* may take the same up. He is then required to take the same forthwith before the nearest justice of the peace, and make oath as required in section six. But this reference to section six, relates to ,the marks and brands, and cannot, from the very nature of things, to the fact that the taking was at his residence or plantation. So that the words " or otherwise, as the case may be," contemplate a taking up without, and not within the settlement. This construction gives force and meaning to all of the provisions of the law on this subject,

and any other leaves them either conflicting or unmeaning.

We next consider the second instruction. Our law provides that if the taker up of any estray animal, shall be faithful in taking care of the same, and any unavoidable accident shall happen thereto, without his fault or neglect, he shall not be accountable therefor ; *provided,* that in all such cases, it shall be his duty within ten days thereafter, to certify the same to the clerk of the county judge, who shall make an entry thereof in his estray book.   Section 12, chapter 104, laws of 1852–3.   It has been assumed in the argument, that the escape of an animal is, or may be, an unavoidable accident, within the meaning of this section.   The only question then is, whether after such escape, defendant would be liable if he failed to give the notice contemplated.   Under the circumstances of this case, we clearly think not.   The primary, and so far as we can see, the sole object of this certificate or notice, is to advise the owner of the property, when examining the estray books, of such loss or accident.   He alone can claim to be injured by such failure.   And when, as the proof here shows, he had knowledge of the loss on the same day it occurred, there is no reason in requiring this certificate to be sent to the clerk.   So far as the parties are concerned, the object of the law is thus fully accomplished, and more than this is not required by either its reason or spirit.

Judgment reversed.